**Irene Murray, et al., Plaintiffs-Appellants, v. Estate of Lewis I. Armstrong, et al., Defendants-Appellees.**

**Gen. No. 11,079.**

Fourth District.

October 28, 1969.

Bernard E. Wall, Campbell, Markowitz, Lawrence & Lenz, of Bloomington (Robert J. Lenz, of counsel), for appellants.

Herrick, Rudasill & Moss, of Clinton (Ray Moss, of counsel), for appellees.

SMITH, J.

This is a suit in ejectment filed by remaindermen after the death of a life tenant to compel the defendants to surrender possession of the premises and for a determination of title. The defendants answered the suit and set up two affirmative defenses; to wit, (1) that the defendants have a fee simple title by virtue of a tax deed in their ancestor and (2) that the plaintiffs' action is barred by the "40-year limitation on claims to real estate" as provided in Ill Rev Stats 1967, c 83, §§ 12.1–12.4.

The facts are stipulated. The trial court held that the statute above cited commonly referred to as the Illinois Marketable Title Act operates as a bar to the plaintiffs' action for ejectment. Neither of the affirmative defenses is a bar to plaintiffs' suit.

Plaintiffs' great-grandfather died in 1904 owning the 36.34 acres of real estate in controversy. By his will, he devised it to the heirs of Maude E. Hickman, his granddaughter, subject to her life estate. Maude E. Hickman married one Van De Warker, gave birth to six children, who are the plaintiffs in this case, and two of whom were born prior to the death of her testator. She died on June 29, 1966.

In 1910, the real estate was sold at a tax sale by the county clerk of DeWitt County and was purchased by one J. D. Scott, who later assigned it to one Isaac L. Armstrong, an uncle of Maude E. Van De Warker, and a granduncle of the plaintiffs in this case. On July 20, 1912, Maude E. Van De Warker conveyed her life interest in the premises to Isaac Armstrong by a quitclaim deed in consideration of the sum of $300. Armstrong died in 1934, and his wife died in 1946. Their children, the defendants, survive them. The defendants have been in the possession of the premises since their father's death. After Mrs. Van De Warker's death on June 29, 1966, the plaintiffs made a demand for possession of the premises, the defendants refused and this suit follows. The trial court held for the defendants and plaintiffs appeal.

The defendants cite Village of Dolton v. First Nat. Bank of Blue Island, 12 Ill2d 435, 147 NE2d 62, as authority for the proposition that since 1951, our Revenue Act changed the authority for the issuance of tax deeds from a ministerial act of the county clerk to a judicial act of the county court and provided that tax deeds issued pursuant to tax sale should be incontestable except by appeal from the order of the court directing the coun-

ty clerk to issue the deed. Ill Rev Stats 1965, c 120, § 747. Thus, the defendants say that the attitude of our courts toward tax deeds has changed completely, that it is now the policy to protect the purchaser wherever possible and that only in an exceptional circumstance would the tax title be defeated. The effect of this case as authority for defendants' tax title is eroded by the fact that the tax deed upon which the defendants relied here was issued by the county clerk of DeWitt County as a ministerial act and cannot by any construction be deemed to be a title acquired through a judicial sale. In addition, the tax deed was defective in several respects. As the law then existed, at least three months' notice had to be given before the expiration of the time of redemption. The affidavit and the records show that the last publication of the notice was on May 17, which was less than three months before the time of redemption which expired on July 12, 1912, nor does the affidavit show any notice by personal service or by publication upon two of the plaintiffs who were in being and minors at the time of the tax proceedings; namely, Harry Van De Warker and Leo Van De Warker. It is unlikely that an uncle was not aware of the whereabouts of these children, or on diligent inquiry could not have found out. He knew where their mother was because he got a deed from her. Isaac L. Armstrong paid $300 for a quitclaim deed from Maude Van De Warker on July 20, 1912, and this in itself suggests that he recognized the tax deed and his tax title to be defective. Defendants fail to show a fee simple title under the tax deed.

We turn now to inquire whether the Illinois Marketable Title Act with its admitted legislative purpose of simplifying and facilitating land title marketability has any application to the facts at bar. The trial court held that it did, and that it barred plaintiffs' claim to this farm. We think otherwise.

■ ■ In The Exchange Nat. Bank of Chicago v. Lawndale Nat. Bank of Chicago, 41 Ill2d 316, 243 NE2d 193, the Supreme Court considered the Illinois Marketable Title Act. The litigants each traced their respective titles from different sources. Exchange pleaded that the Illinois Marketable Title Act did not apply to a chain of title founded upon a "wild deed" which they regarded as a chain of title not originating in a grant from the United States. The Supreme Court held that Exchange was correct and that the statute was not intended to apply to a "wild deed" which was not specifically included in the Act as it is in the statutes of some other states and held that the defense of the Illinois Marketable Title Act was not available to Lawndale as a defense. Our statute is, to a great extent, based upon the one in Iowa, and in Lane v. Travelers Ins. Co., 230 Iowa 973, 299 NW 553, the court held that the children of a life tenant were barred of their contingent remainder for failure to comply with the statute similar to the one in Illinois. There is, however, a significant difference between the Iowa statute and the Illinois statute. Both statutes enumerate specific types of sources of title which are protected by the respective statutes. In the Iowa statute, a tax deed is enumerated as one to be protected by the statute, whereas the Illinois statute does not specifically specify tax deeds. It is the general accepted rule that "All changes in words and phrasing will be presumed deliberately made with the purpose to limit, qualify, or enlarge the adopted law. . . ." 82 CJS, Statutes, § 371. An Iowa case construing an Iowa statute specifically applicable to tax deeds is of little weight in considering an Illinois statute designed for the same purpose which omits a tax deed. In addition, in Northwestern Law Review, Vol 61, p 846, footnote 17, the writer of the article discussing this subject makes the further distinction that "Contingent remainders were

subject to extinguishment by adverse possession in Iowa, while in Illinois adverse possession does not run against a remainderman until he has the right to possession." In the case at bar, this was on the death of the life tenant in 1966. Thus Lane is neither authoritative nor persuasive.

It should also be noted that, in addition to persons holding by direct conveyance, those who are considered to hold chain of title are ". . . For the purposes of this Act, any person who holds title to real estate by will or descent from any person who held the title of record to such real estate at the date of his death or who holds title by decree or order of any court, or by deed issued pursuant thereto, i. e., by trustee's, trustee's in bankruptcy, conservator's, guardian's, executor's, administrator's, receiver's, assignee's, master's-in-chancery, or sheriff's deed shall be deemed to hold chain of title. . . ." Ill Rev Stats 1967, c 83, § 12.1. It should be noted that a tax deed is not included in this list. In addition, the deeds described are those issued pursuant to an order of court. We have already pointed out that the deed issued here on which the defendants rely as a defense was a ministerial deed and not a deed issued by a court order. Defendants' deed is beyond the pale of the statute and is not protected by it.

Accordingly neither the tax deed nor the Illinois Marketable Title Act, each pleaded as an affirmative defense to the suit of the plaintiffs, is a bar to the suit. It follows therefore that this cause must be reversed and remanded to the trial court with directions to enter a decree in favor of the plaintiffs in accordance to the views herein expressed.

Reversed and remanded.

TRAPP, P. J. and CRAVEN, J., concur.